UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
------------------------------------------------------------ X
UNITED STATES OF AMERICA,

                          Plaintiff,

                    Case No. 25-cr-00011

      -against-                   Hon. HALA Y. JARBOU


RYAN ROMARIO DOOKHAN,

                         Defendant.
------------------------------------------------------------ X


**DEFENDANT RYAN ROMARIO DOOKHAN'S SENTENCING MEMORANDUM IN SUPPORT OF IMPOSITION OF THE STATUTORY MANDATORY MINIMUM AND REQUEST FOR DEPARTURE**


JOSEPH MATTHEW CALDARERA
Lead Counsel for Defendant
RYAN ROMARIO DOOKHAN
Law Offices of Robert Tsigler, PLLC
299 Broadway
Suite 1400
New York, NY 10007
(718) 701-3086
Email: JC@tsiglerlaw.com


SANFORD A. SCHULMAN
Co-Counsel and Attorney for Defendant
RYAN ROMARIO DOOKHAN
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net

To: CONSTANCE TURNBULL
U.S. Attorney (Grand Rapids)
The Law Bldg.
330 Ionia Ave., NW
Grand Rapids, MI 49501-0208
(616) 410-5714
Email: constance.turnbull@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ................................................... 4

NATURE AND CIRCUMSTANCES OF THE OFFENSE ................... 6

HISTORY AND CHARACTERISTICS OF THE DEFENDANT ........ 8

INTELLECTUAL DISABILITY, DIMINISHED CAPACITY, AND EXTREME
    EMOTIONAL IMMATURITY ................................................... 10

NEXUS BETWEEN INTELLECTUAL DISABILITY
    AND THE OFFENSE CONDUCT ......................................... 12

THE PURPOSES OF SENTENCING ........................................... 13

    Just Punishment ................................................................. 13

    Deterrence .......................................................................... 14

    Protection of the Public .................................................... 15

THE ADVISORY GUIDELINES, DEPARTURES, AND VARIANCE AUTHORITY    15

PROBATION OFFICE CONSIDERATIONS ................................ 16

CONCLUSION ............................................................................. 17

## INTRODUCTION AND SUMMARY

In its independent evaluation of this case, the United States Probation Office concluded that "factors under 18 U.S.C. § 3553 may warrant a sentence outside of the advisory guideline range." Probation explained that Mr. Ryan Romario Dookhan is **"very childlike in his functioning,"** that he **"does not care for himself,"** that he **"sleeps with his parents when scared or ill,"** and that he **"requires supervision to complete even simple tasks."** Probation further observed that Mr. Dookhan **"clearly has cognitive and learning deficits which have gone unassessed and unaddressed throughout his lifetime,"** and noted the possibility of additional neurological deficits stemming from untreated seizure activity. (Emphasis added).

That conclusion—reached by a neutral arm of the Court after reviewing the offense conduct, Mr. Dookhan's history, and his functional limitations—captures the central reality of this case. Mr. Dookhan is not a sophisticated or predatory offender. He is an individual with profound intellectual and emotional limitations whose development has remained markedly delayed into adulthood, and whose functioning bears little resemblance to that of a typical adult defendant appearing before this Court.

This sentencing memorandum is submitted on behalf of Mr. Dookhan in advance of sentencing. He fully acknowledges the seriousness of the offense of conviction and accepts

4

responsibility for his conduct. He does not dispute the statutory framework governing this case, including the fifteen-year mandatory minimum sentence prescribed by Congress for violations of 18 U.S.C. § 2251(a). If the Court determines that no legally authorized basis exists to impose a sentence below that mandatory minimum, Mr. Dookhan accepts that result.

At the same time, sentencing under 18 U.S.C. § 3553(a) requires an individualized assessment of both the offense and the offender. As Probation's evaluation makes clear, this case presents extraordinary mitigating circumstances that distinguish Mr. Dookhan from the class of defendants for whom sentences well above the statutory minimum are typically imposed. Mr. Dookhan has no prior criminal history, no history of hands-on sexual abuse, no pattern of grooming behavior, and no evidence of sexual predation. The offense conduct, while serious, does not reflect escalating behavior, calculated manipulation, or criminal sophistication.

Most significantly, Mr. Dookhan's lifelong intellectual disability and extreme emotional immaturity substantially diminish his culpability and materially inform the Court's analysis under § 3553(a). These impairments are not situational or self-serving; they are longstanding, well-documented, and independently recognized by the Probation Office. They explain how the offense occurred and why an extraordinarily long sentence beyond the

statutory minimum would not meaningfully advance deterrence, protection of the public, or rehabilitation.

While this Court must correctly calculate the applicable advisory Guidelines range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51, and must instead conduct an individualized assessment under 18 U.S.C. § 3553(a). For these reasons, Mr. Dookhan respectfully requests that the Court impose a sentence below the statutory mandatory minimum where legally authorized. In the alternative, and recognizing the statutory constraint, he asks the Court to impose no more than the fifteen-year mandatory minimum, which already constitutes an extraordinarily severe sanction for a first-time offender with no criminal history and no hands-on conduct, and which is sufficient but not greater than necessary to satisfy the purposes of sentencing.

**NATURE AND CIRCUMSTANCES OF THE OFFENSE**
*(18 U.S.C. § 3553(a)(1))*

The offense conduct in this case is serious and unlawful, and Mr. Dookhan does not seek to minimize it. At the same time, the Court's obligation under § 3553(a) is to evaluate the nature and circumstances of the offense as it actually occurred, not as an abstract category.

6

The conduct underlying Mr. Dookhan's conviction occurred over a limited period and involved online communications. It did not involve physical contact, attempted meetings, long-term grooming strategies, or repeated victimization. There is no evidence that Mr. Dookhan sought out minors systematically, cultivated multiple victims, or engaged in escalating or compulsive conduct. He did not conceal his identity, employ sophisticated manipulation techniques, or attempt to evade law enforcement detection.

This case is therefore materially distinguishable from § 2251 cases involving serial predation, hands-on abuse, or elaborate grooming schemes. While all offenses under § 2251 are grave, not all such cases present the same degree of culpability or future risk. The Court may—and should—consider these distinctions in determining what sentence is sufficient but not greater than necessary.

The offense conduct here reflects poor judgment, immaturity, and impaired impulse control, not calculated exploitation. These characteristics are consistent with Mr. Dookhan's documented intellectual disability and emotional immaturity, discussed in detail below. They do not excuse the conduct, but they do bear directly on culpability and proportional punishment.

The Court can acknowledge the seriousness of the offense while also recognizing that this case does not involve the hallmarks of sexual predation that typically justify sentences

far in excess of the statutory minimum. Doing so is consistent with § 3553(a)'s requirement of individualized sentencing.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT
*(18 U.S.C. § 3553(a)(1))*

Ryan Romario Dookhan is in his early thirties chronologically, but he has never functioned as an independent adult in any meaningful sense. His life history is not marked by criminality or predatory tendencies. Rather, it is defined by lifelong cognitive limitation, emotional immaturity, and profound dependence on his parents for basic functioning.

Mr. Dookhan has lived his entire life in his parents' home. He has never lived independently. He has never managed an independent household, handled finances on his own, or demonstrated sustained adult autonomy. His parents and his siblings assist him with daily decision-making, transportation, scheduling, and understanding instructions. He relies on them not only for logistical support, but for emotional regulation and stability.

Perhaps most strikingly, despite being in his early thirties, Mr. Dookhan at times continues to sleep in bed with his parents. This fact is not offered for shock value or sympathy, but because it is a powerful and concrete illustration of his extreme emotional immaturity and dependence. This behavior is fundamentally inconsistent with adult

emotional development and judgment. It reflects a level of vulnerability, regression, and reliance that is more consistent with a child or adolescent than with a fully functioning adult.

Mr. Dookhan has never been married and has no children. He has had extremely limited romantic or social relationships. His social world has been largely confined to his immediate family. He struggles with social cues, boundaries, and emotional regulation—difficulties that have persisted since childhood and have never resolved with age.

Despite these limitations, Mr. Dookhan has attempted to live a lawful life. He has maintained employment in structured and supervised environments, where expectations were clear and support was available. He has no prior criminal history—no juvenile adjudications, no arrests, and no convictions of any kind. This offense represents an aberrational departure from an otherwise law-abiding life, not the manifestation of an entrenched criminal disposition.

Nothing in Mr. Dookhan's background suggests sexual predation, manipulative behavior, or criminal sophistication. His history reflects immaturity and vulnerability, not dangerousness. These characteristics are highly relevant to the Court's assessment of culpability, deterrence, and the appropriate length of incarceration.

**INTELLECTUAL DISABILITY, DIMINISHED CAPACITY, AND EXTREME EMOTIONAL IMMATURITY**

Mr. Dookhan's intellectual disability and diminished capacity are among the most significant mitigating factors before the Court. These impairments are lifelong, well documented, and corroborated by developmental history, educational records, family interviews, and a comprehensive psychodiagnostic evaluation conducted in this case.

The evaluation concludes that Mr. Dookhan meets the criteria for a provisional diagnosis of Mild Intellectual Disability under DSM-5 standards. This diagnosis is supported by a constellation of longstanding deficits, including delayed speech and motor development, chronic academic failure, impaired abstract reasoning, limited comprehension, and markedly deficient adaptive functioning.

Mr. Dookhan did not begin speaking until approximately five years of age and did not walk independently until approximately three years of age—developmental delays that are clinically significant and consistent with later intellectual disability. Throughout his schooling, he struggled academically despite family support, repeated grades, failed standardized examinations, and ultimately left high school without a diploma. These failures were not the product of indifference or misconduct, but of cognitive limitations that were never adequately addressed.

10

As an adult, these impairments persist. Mr. Dookhan struggles with abstract reasoning, future planning, impulse control, and risk assessment. He has difficulty appreciating long-term consequences and regulating behavior, particularly in emotionally charged or unstructured environments. He functions best when structure, supervision, and clear boundaries are imposed by others. When those supports are absent—especially in online environments—his judgment deteriorates.

Emotionally, Mr. Dookhan functions at a level far below his chronological age. His continued reliance on his parents for emotional comfort, supervision, and even physical proximity underscores the depth of his immaturity. The fact that he continues to sleep in his parents' bed at times is not an isolated quirk; it is a manifestation of arrested emotional development, impaired self-regulation, and dependence that has persisted into adulthood.

These cognitive and emotional limitations substantially diminish Mr. Dookhan's culpability. While he understood in an abstract sense that his conduct was wrong, his intellectual disability materially impaired his ability to regulate impulses, assess risk, and disengage appropriately. Courts have long recognized that diminished capacity may reduce culpability even where a defendant is legally aware that conduct is unlawful.

Mr. Dookhan's impairments do not excuse his conduct, and he does not seek to avoid accountability. They do, however, provide essential context for understanding how the

offense occurred and why an extraordinarily long sentence beyond the statutory minimum would be greater than necessary to achieve the purposes of sentencing.

## NEXUS BETWEEN INTELLECTUAL DISABILITY AND THE OFFENSE CONDUCT

There is a direct and meaningful nexus between Mr. Dookhan's intellectual disability, emotional immaturity, and the offense conduct. This case does not involve calculated exploitation, strategic grooming, or criminal sophistication. Rather, the conduct reflects poor judgment, impulsivity, and impaired self-regulation, characteristics that are clinically consistent with Mr. Dookhan's documented cognitive limitations.

Mr. Dookhan did not engage in prolonged manipulation of victims, did not cultivate relationships over extended periods, and did not demonstrate an ability to anticipate consequences or conceal conduct. He did not employ false identities, elaborate deception, or evasion tactics. These absences are not incidental; they reflect his limited capacity for planning, abstraction, and foresight.

The offense occurred in an online environment that lacked structure, supervision, or external controls. For an individual with Mr. Dookhan's impairments, such environments present heightened risk. His diminished ability to regulate impulses and assess long-term

12

consequences left him particularly vulnerable to engaging in unlawful conduct without fully appreciating the gravity or permanence of his actions.

This nexus matters. The Supreme Court has emphasized that sentencing must be individualized, taking into account not only what a defendant did, but *why* the conduct occurred. Where impaired cognitive functioning materially contributes to an offense, culpability is reduced—even where legal responsibility remains intact. Mr. Dookhan's conduct is best understood as the product of immaturity and diminished judgment, not predatory intent.

## THE PURPOSES OF SENTENCING UNDER
18 U.S.C. § 3553(a)(2)

### Just Punishment

A sentence of fifteen years' imprisonment is an **extraordinarily severe sanction**, particularly for a first-time offender with no criminal history and no hands-on conduct. Such a sentence already reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  The Sixth Circuit reviews federal sentences for procedural and substantive reasonableness, examining whether the district court adequately considered the § 3553(a) factors as applied to the individual defendant. *See, e.g.*, United States v. Tristan-Madrigal, 601 F.3d 629, 632–34.

Imposing a sentence substantially above the mandatory minimum would risk severing the relationship between punishment and individualized culpability. Given Mr. Dookhan's diminished capacity, extreme emotional immaturity, and lack of predatory characteristics, a sentence beyond the statutory minimum would be greater than necessary to achieve retributive goals.

**Deterrence**

General deterrence is an important consideration, but its marginal utility diminishes rapidly as sentences become extraordinarily long. There is little evidence that extending incarceration beyond fifteen years meaningfully increases deterrent effect, particularly in cases involving cognitively impaired individuals who are unlikely to engage in rational cost-benefit analysis.

Specific deterrence is amply satisfied here. Mr. Dookhan has been arrested, prosecuted, convicted, and will serve a lengthy term of imprisonment. Combined with conditions of supervised release and mandatory treatment, this sentence will strongly deter future misconduct.

**Protection of the Public**

The record does not support a finding that Mr. Dookhan poses a future danger comparable to sexually predatory offenders. He has no history of hands-on abuse, no pattern of grooming,

and no prior criminal conduct. His offense did not escalate over time, and there is no evidence of compulsive or habitual behavior.

Moreover, Mr. Dookhan's intellectual disability and emotional immaturity reduce, rather than increase, his capacity for predatory conduct. With appropriate supervision, structure, and treatment, the risk to the public is manageable without resorting to extreme incapacitation.

The statutory mandatory minimum already provides significant incapacitation. Additional incarceration would add little incremental public safety benefit.

**THE ADVISORY GUIDELINES, DEPARTURES], AND VARIANCE AUTHORITY**

The advisory Sentencing Guidelines provide an important benchmark, but they do not supplant the Court's obligation to impose an individualized sentence under 18 U.S.C. § 3553(a). Since *United States v. Booker*, the Guidelines are advisory, and the Court must consider them alongside all other statutory factors to determine a sentence that is sufficient but not greater than necessary.

Here, the Guidelines calculation is driven largely by offense characteristics that do not meaningfully distinguish between vastly different levels of culpability. As applied to Mr. Dookhan, the Guidelines risk overstating culpability by treating conduct rooted in cognitive impairment and emotional immaturity the same as conduct driven by predatory intent and criminal sophistication.

15

Although statutory constraints limit the Court's authority to impose a sentence below the mandatory minimum absent a legally authorized mechanism, the Court retains full authority to determine whether a sentence above that minimum is warranted. In doing so, the Court may consider policy concerns, diminished capacity principles, and the individualized circumstances of the defendant.

Courts have repeatedly recognized that intellectual disability and diminished capacity are relevant considerations in assessing culpability, deterrence, and proportional punishment. While these factors may not independently authorize a sentence below the mandatory minimum, they strongly inform the Court's assessment of whether the mandatory minimum is itself sufficient to satisfy the purposes of sentencing.

**PROBATION OFFICE CONSIDERATIONS**

The United States Probation Office's evaluation and recommendation in this case appropriately recognizes several critical mitigating factors. Probation noted Mr. Dookhan's lack of criminal history, absence of hands-on sexual abuse, and lack of evidence suggesting grooming or predatory behavior. Probation further acknowledged Mr. Dookhan's significant cognitive limitations and emotional immaturity.

These findings are consistent with the defense's position and underscore that this case falls outside the heartland of § 2251 prosecutions involving serial or predatory offenders. The

16

defense's request for restraint at sentencing aligns with Probation's recognition that a sentence beyond what is necessary to accomplish the goals of sentencing would be unwarranted.

Judges rightly afford substantial weight to Probation's assessment, particularly where, as here, it is grounded in a careful evaluation of the defendant's history, characteristics, and risk profile. The Court may rely on these findings in concluding that a sentence at the statutory minimum is sufficient but not greater than necessary.

**CONCLUSION**

Mr. Dookhan stands before the Court having accepted responsibility for his conduct and fully aware of the gravity of his offense. He does not seek to minimize the harm caused or to evade accountability. He does, however, ask the Court to impose a sentence that reflects individualized justice, grounded in the realities of who he is and why this offense occurred.

Mr. Dookhan is a first-time offender with no criminal history, no hands-on conduct, and no indicia of sexual predation. He suffers from lifelong intellectual disability and profound emotional immaturity that substantially diminish culpability and undermine the utility of extraordinarily long incarceration. These factors distinguish him from the class of offenders for whom sentences far above the statutory minimum are typically imposed.

For these reasons, Mr. Dookhan respectfully requests that this Court impose a sentence below the statutory mandatory minimum where legally authorized. In the alternative, and recognizing the statutory constraint, he asks the Court to impose no more than the fifteen-year mandatory minimum, which already constitutes an extraordinarily severe sanction and is sufficient to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

_____/s/  Joseph Caldarera_____

18